```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                          - - -

UNITED STATES OF AMERICA      :  CRIMINAL NO. 11-585-1
                              :
             v.               :  Philadelphia, Pennsylvania
                              :  July 18, 2012
WILLIAM BRIAN SUMMERS         :  9:05 o'clock a.m.
. . . . . . . . . . . . . . . .
```

```
                    CHANGE OF PLEA HEARING
          BEFORE THE HONORABLE TIMOTHY R. RICE
              UNITED STATES MAGISTRATE JUDGE
```

                          - - -

APPEARANCES:

For the Government:       ASHLEY K. LUNKENHEIMER, ESQUIRE
                          U.S. Attorney's Office
                          615 Chestnut Street, Suite 1250
                          Philadelphia, PA   19106


For the Defendant:        ALAN J. TAUBER, ESQUIRE
                          Lindy & Tauber
                          1800 John F. Kennedy Boulevard
                          Suite 1500
                          Philadelphia, PA   19103


                          - - -

Audio Operator:           Sharon A. Hall

Transcribed by:           Tracey J. Williams, CET

(Proceedings recorded by For the Record Gold digital sound
recording; transcript produced by AAERT-certified
transcriber.)

                          - - -




                    Laws Transcription Service
                     48 W. LaCrosse Avenue
                      Lansdowne, PA 19050
                        (610)623-4178

1           (The following occurred in open court at 9:05

2    o'clock a.m.:)

3           THE COURT:  Please be seated.  Good morning,

4    everyone.

5           ALL:  Good morning, your Honor.

6           THE COURT:  Ms. Lunkenheimer, Mr. Tauber.

7           MR. TAUBER:  Thank you for accommodating us on short

8    notice.

9           THE COURT:  Of course.  Mr. Summers, good morning.

10          THE DEFENDANT:  Good morning.  How are you doing,

11   Judge?

12          THE COURT:  I'm doing good, thank you.

13          The first order of business, Mr. Summers, I notice

14   you've executed a consent to have me handle your case.  Do

15   you understand you could have Judge Jones do it, if you

16   prefer?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay, all right.  So I'll place that on

19   the docket.

20          Ms. Hall, could you swear Mr. Summers, please?

21          Could you please stand, sir?

22          THE AUDIO OPERATOR:  Please raise your right hand

23   and state your name for the record.

24          THE DEFENDANT:  William B. Summers.

25          WILLIAM BRIAN SUMMERS, Sworn.

1          THE AUDIO OPERATOR:  Thank you.

2          THE COURT:  All right.  You can be seated, sir.

3          Sir, you're now under oath and any answer you give

4    must be truthful and, if you answer falsely, it could be used

5    against you in a prosecution for making a false statement or

6    perjury.

7          THE DEFENDANT:  Okay, yes.

8          THE COURT:  All right.  What I'm going to do, sir,

9    is I'm going to ask you a series of questions to determine if

10   you really want to plead guilty and if you're doing so of

11   your own free will and you understand all the rights you're

12   giving up.  All right?  So what I'm going to ask you to do is

13   just sit there and listen.  If you don't understand something

14   I ask you, you can ask me to explain it more or you can ask

15   to speak privately with your attorney, Mr. Tauber, and you

16   can get clarification.

17         THE DEFENDANT:  Okay.

18         THE COURT:  So I want you to take your time and make

19   sure you fully understand everything that's happening.  Okay?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  All right.  Could you state your full

22   name and your age, please?

23         THE DEFENDANT:  William B. Summers, age 53.

24         THE COURT:  All right.  And can you read, write and

25   speak English?

4

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  And how far did you go in

3    school?

4          THE DEFENDANT:  High school graduate.

5          THE COURT:  All right, excellent.  Have you ever had

6    or been treated for any drug or alcohol addiction or mental

7    illness?

8          THE DEFENDANT:  Mental illness.

9          THE COURT:  Okay, tell me about that.

10         THE DEFENDANT:  I've been hospitalized seven times

11   for schizo-affective disorder.

12         THE COURT:  Okay.

13         THE DEFENDANT:  I hear voices.

14         THE COURT:  All right.  Are you being -- are you on

15   any medication right now?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Tell me about that.

18         THE DEFENDANT:  I'm on Prozac, Welbutrin -- I have

19   depression also -- I'm on Haloperidol, but I don't think the

20   Haloperidol works.

21         THE COURT:  Okay.

22         THE DEFENDANT:  I don't --

23         THE COURT:  Does the medicine affect your ability to

24   understand what's going on?

25         THE DEFENDANT:  I hear voices, but I understand.

1    Like I'm hearing voices now.

2           THE COURT:  Oh, you are?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Okay.

5           THE DEFENDANT:  But I understand.

6           THE COURT:  Do you want to do this another day?

7           THE DEFENDANT:  No, I'm fine.

8           THE COURT:  Do you understand who I am?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Who am I?

11          THE DEFENDANT:  Judge Rice.

12          THE COURT:  Okay.  And what's my role?  What's my

13   function in this process?

14          THE DEFENDANT:  To mediate between the Judge and the

15   Government and --

16          THE COURT:  Well, okay.  Actually, my role here is

17   to determine whether you're competent and willing to plead

18   guilty to these offenses, because this is a serious matter.

19   You scheduled a hearing to admit that you did the criminal

20   conduct the Government alleges.

21          THE DEFENDANT:  Right.

22          THE COURT:  All right?  And then, if you plead

23   guilty, then I'll have to impose a sentence on you.

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  All right.  Do you understand who Mr.

1    Tauber is and who Ms. Lunkenheimer is?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Who are they?

4              THE DEFENDANT:  Alan is my lawyer and she's the

5    attorney, District Attorney.

6              THE COURT:  Okay, very good.  Now, do you want to do

7    this another day when you're not hearing voices?

8              THE DEFENDANT:  No, I'm fine.

9              THE COURT:  Tell me about the voices you're hearing.

10             THE DEFENDANT:  They tell me to hurt myself.

11             THE COURT:  Okay.  And do you have a -- do you have

12   an interest in doing that?

13             THE DEFENDANT:  No, I don't -- not at the moment,

14   no.

15             THE COURT:  Okay.  Do you want to consult with your

16   doctor about that before you make this decision?

17             THE DEFENDANT:  No, I'm fine.

18             THE COURT:  All right.  Do you have any drug or

19   alcohol addiction?

20             THE DEFENDANT:  No.

21             THE COURT:  Okay.  Mr. Tauber, do you have any views

22   on your client's competence to enter a guilty plea?

23             MR. TAUBER:  No, your Honor.  I understand the

24   issues with respect to his mental illness, I do not think

25   they impact on his competency to understand the proceedings

7

1   or the charges or what is happening with respect to the
2   prosecution.  I think these issues that he's dealing with, I
3   believe they're independent of his ability to understand and
4   comprehend what is happening around him.  So I think -- I
5   think he's competent to proceed.
6          THE COURT:  All right.  Ms. Lunkenheimer?
7          MS. LUNKENHEIMER:  Well, that's -- I have not had a
8   lot of interaction with Mr. Summers, but my understanding
9   from Mr. Tauber has been that he -- and the reason we're so
10  sort of late to this particular game in terms of pleading
11  guilty before the other hearing is that Mr. Tauber and Mr.
12  Lindy, I understand, were really exploring whether Mr.
13  Summers was appropriate for some sort of mental health-
14  diversion situation, and they ultimately determined that his
15  mental competency really didn't impact on his ability to
16  understand the proceedings and right from wrong and all the
17  things necessary to proceed here.  That's my understanding; I
18  have no personal knowledge of that, but that is why it did
19  take us so long to get before you.  And so it's my
20  understanding from Mr. Tauber that he did not determine that
21  Mr. Summers could not understand or proceed today despite
22  very serious and I think long-term mental health issues.
23         THE COURT:  Okay.  Do you feel as though you're
24  getting the proper treatment and medication that you need to
25  deal with your tendencies to hurt yourself?

1          THE DEFENDANT:  Well, I used to see when I was
2   working, I used to see a better psychiatrist, now I'm forced
3   to go to like a clinic and he don't spend enough time with
4   me.  I'm in and out of there in like five or ten minutes.
5          THE COURT:  Well, would it be helpful if I arranged
6   with Pretrial Services to have you placed in some type of
7   treatment program through the court?
8          THE DEFENDANT:  What do you mean, like a psych unit?
9          THE COURT:  Not necessarily.  I would leave it to
10  Pretrial Services to talk to a medical professional and find
11  out what the appropriate treatment or help that you need is
12  because, if you need more help than you're getting now, I'll
13  try to help you get it.
14         MR. TAUBER:  I think what the Judge is saying is
15  that Pretrial Services might be able to find you better care
16  than you're getting.
17         THE DEFENDANT:  Right, yeah.
18         MR. TAUBER:  And the Judge is offering to assist you
19  in that.
20         THE DEFENDANT:  Would I have to pay for it?
21         THE COURT:  No --
22         THE DEFENDANT:  No.
23         THE COURT:  -- the court would pay for it.  You're
24  court-appointed, right, Mr. Tauber?
25         MR. TAUBER:  Yes, yes.

1          THE COURT:  Yeah, I believe the court would pay for
2    that.
3          THE DEFENDANT:  Mm-hmm.
4          THE COURT:  Is that something you want me to explore
5    with Pretrial?
6          THE DEFENDANT:  Yes, sir.  Thank you.
7          THE COURT:  All right.  I'm going to order that
8    Pretrial Services evaluate you for possible mental health
9    treatment, counseling, in addition to what you're receiving
10   now at the clinic.
11         THE DEFENDANT:  Right, okay.
12         THE COURT:  Okay?  Now, are you prepared to proceed
13   today and enter a guilty plea?
14         THE DEFENDANT:  Yes, sir.
15         THE COURT:  Okay.  Because, when you enter a guilty
16   plea, you're admitting that you committed a crime and you
17   can't change your mind.
18         THE DEFENDANT:  Right.
19         THE COURT:  And you want to do that?
20         THE DEFENDANT:  Yes, sir.
21         THE COURT:  Okay.
22         MR. TAUBER:  Your Honor, just so -- just -- I have
23   not seen Pretrial's report to you, but Mr. Summers has had a
24   number of hospitalizations over the last year and I know that
25   Pretrial has followed that, because I often learned about it

1    from a call from Pretrial.  So I know that they're -- they

2    have some familiarity with Mr. Summers' issues and his care,

3    so it will not be -- it will not come as a big surprise and

4    they may already, you know, have done some of the -- you

5    know, have some of the knowledge and information in order to

6    do that.

7           THE COURT:  I mean, they gave him a glowing report.

8    they said he's fully compliant in -- according to Mr. Patsay

9    (ph.), who's your therapist?

10          THE DEFENDANT:  Yes.

11          THE COURT:  That you're in compliance with the

12   treatment plan and they tell me that he's doing very well.

13          MR. TAUBER:  I think he has been for quite a while.

14   I think early on when this case first happened he had a

15   hospitalization and there may have been a subsequent one.

16          THE COURT:  Okay.

17          THE DEFENDANT:  I had two of them, yes.

18          THE COURT:  Okay.  Well, I'm going to order them to

19   get you some additional help.  And what I'd urge you to do,

20   if you sense that you're running into problems, either with

21   hearing voices or with any type of tendency to hurt yourself,

22   contact Pretrial or contact Mr. Tauber and we'll get you some

23   immediate help.

24          THE DEFENDANT:  Okay.

25          THE COURT:  Because I don't want anything bad to

1    happen to you.

2            THE DEFENDANT:  Yes.  I usually get to the crisis

3    center --

4            THE COURT:  Okay.

5            THE DEFENDANT:  -- and they admit me into the

6    hospital for like ten days.

7            THE COURT:  Okay.

8            THE DEFENDANT:  Would that be something --

9            THE COURT:  Do you feel like you want to be

10   admitted?

11           THE DEFENDANT:  No, not at the present moment.

12           THE COURT:  Okay.

13           MR. TAUBER:  Your Honor, he is -- Mr. Summers is

14   married and his wife follows and monitors the situation very

15   carefully as well.

16           THE COURT:  Okay.

17           MR. TAUBER:  So he's not on his own out there.

18           THE COURT:  Okay, very good.

19           Can you hear and understand me okay today?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Are any of the voices that you said

22   you've been hearing, does that affect your ability to

23   understand what I'm talking to you about?

24           THE DEFENDANT:  No.

25           THE COURT:  Okay.  Now, has Mr. Tauber gone over all

1    the charges against you and fully explained your trial rights

2    and all the defenses you could bring to those charges?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Now, are you voluntarily agreeing to

5    plead guilty?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  All right.  Have you had enough time to

8    talk to Mr. Tauber about it?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  And has he done everything that you

11   wanted him to do on your case?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Now, I understand you're pleading

14   without a plea agreement.  So you're pleading guilty and

15   there's no promises from the Government as to anything in

16   this case.

17             THE DEFENDANT:  Right.

18             THE COURT:  Do you understand that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Okay.  Other than that, did anybody

21   promise you anything to get you to plead guilty?

22             THE DEFENDANT:  No.

23             THE COURT:  Do you understand that no one can

24   guarantee what your sentence will be?

25             THE DEFENDANT:  Yes, sir.

13

```
 1           THE COURT:  Did anyone use force, violence or
 2    threats to get you to plead guilty?
 3           THE DEFENDANT:  No, sir.
 4           THE COURT:  Are you pleading guilty because it's
 5    your own free will?
 6           THE DEFENDANT:  Yes, sir.
 7           THE COURT:  Did anyone tell you to say -- tell you
 8    what to say here today --
 9           THE DEFENDANT:  No.
10           THE COURT:  -- or put words in your mouth?
11           THE DEFENDANT:  No.
12           THE COURT:  Do you understand that if you're not a
13    U.S. citizen that a guilty plea could subject you to
14    deportation?
15           THE DEFENDANT:  Yes, sir.
16           THE COURT:  All right.  Have you ever been on any
17    court supervision before, such as probation, parole or --
18           THE DEFENDANT:  No.
19           THE COURT:  -- ARD or anything like that?
20           THE DEFENDANT:  No.
21           THE COURT:  Okay.  Do you have any prior criminal
22    convictions?
23           THE DEFENDANT:  No.
24           THE COURT:  All right.  So are you going to be
25    filing a motion also, Mr. Tauber?
```

14

1          MR. TAUBER:  Yes, we will, your Honor.

2          THE COURT:  Under 3607?

3          MR. TAUBER:  Yes, sir.

4          THE COURT:  Do you know about the hearing on Monday?

5          MR. TAUBER:  I do and I unfortunately have a

6   conflict, and I know that there is at least one other

7   attorney who will not be attending.  I have not -- it was my

8   intention to receive the notes from the prior hearing, I know

9   there's been a hearing already.  I believe that whatever

10  questions I would have will be covered by the counsel who was

11  there and if there's not -- and if there's something other

12  than that -- I'm going to get the notes and review them and

13  if there's additional testimony, which I really think it

14  would be unlikely, I will discuss it with Ms. Lunkenheimer

15  and we'll have to work out some arrangement either to get the

16  information or --

17          THE COURT:  Okay.

18          MR. TAUBER:  -- to recall the witness for a brief

19  period of time, but I don't anticipate that to be an issue.

20          THE COURT:  Okay.

21          MS. LUNKENHEIMER:  And we obviously won't be

22  proceeding on any specific evidence relating to William

23  Summers at the hearing on Monday.

24          THE COURT:  Okay, very good.

25          Now, it's my understanding that the maximum

1   penalties here, Mr. Tauber, are -- for attempted possession

2   of Oxycodone -- one year in prison, one year of supervised

3   release, a $1,000 fine and a $100 special assessment.  And if

4   you're placed on supervised release, if supervision is

5   revoked, the original term of imprisonment may be increased

6   by up to one year.  Thus, a violation of supervised release

7   increases the possible period of conviction and makes it

8   possible that you could serve your original sentence plus an

9   additional period without credit for the time already spent.

10  So you could end up for -- the maximum is a year in jail, but

11  if you violate a condition of supervised release it could be

12  more.

13          THE DEFENDANT:  Mm-hmm.

14          THE COURT:  Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  All right.  Do you understand this

17  offense is covered by what's called the Sentencing Guidelines

18  and I'm required to consider those Guidelines at sentencing,

19  but I may depart from them under certain circumstances?

20          (Pause.)

21          THE COURT:  Do you want to talk to Mr. Tauber about

22  that for a minute?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Okay, go ahead.

25          (Discussion held off the record.)

16

1          THE DEFENDANT:  Right, okay.

2          THE COURT:  Okay?

3          THE DEFENDANT:  I understand.

4          THE COURT:  So I'm going to be -- the Guidelines are

5    just a set of kind of rules that help me decide what your

6    possible sentencing range should be --

7          THE DEFENDANT:  Mm-hmm.

8          THE COURT:  -- and then I can either go up or down

9    from that depending on what factors I learn about your case.

10          THE DEFENDANT:  Okay.

11          THE COURT:  So a Probation Officer is going to

12    prepare what's called a presentence report and, if you

13    disagree with the findings of that report, you can raise

14    objections to Mr. Tauber --

15          THE DEFENDANT:  Right.

16          THE COURT:  -- and then I'll have to rule on those

17    objections.  The Government could also make objections.  But

18    if you disagree with my rulings on it, on your objections,

19    the guilty plea still remains.

20          THE DEFENDANT:  Okay.

21          THE COURT:  So that doesn't mean you can change your

22    mind and then have a trial.

23          THE DEFENDANT:  Right, okay.

24          THE COURT:  Because right now, as you sit here, you

25    could have a trial on this case.

17

1             THE DEFENDANT:  Mm-hmm.

2             THE COURT:  Okay?

3             THE DEFENDANT:  Okay.

4             THE COURT:  Now, also I wanted to talk to you about

5    your job.  I don't know what effect, if any, a guilty plea

6    will have on your ability to get your job back at Boeing.

7             THE DEFENDANT:  Mm-hmm.

8             THE COURT:  So there is a possibility that, by

9    pleading guilty, it could impede your ability to get your job

10   back.  Do you understand that?  Why don't you talk to Mr.

11   Tauber about that.

12            (Discussion held off the record.)

13            THE DEFENDANT:  All right, I understand.

14            THE COURT:  Okay?

15            THE DEFENDANT:  Yes.

16            THE COURT:  So you're hoping to get your job back at

17   Boeing?

18            THE DEFENDANT:  I was, yes.

19            THE COURT:  Okay.  Now, pleading guilty, I don't

20   know what effect it's going to have, but I wanted you to know

21   that there is a chance that somebody at Boeing could say

22   because he pled guilty and admitted this that we're not going

23   to take him back.

24            THE DEFENDANT:  Mm-hmm.

25            THE COURT:  I don't know whether that's the case or

1   not, but I want you to know that it's a possibility.

2          THE DEFENDANT:  Okay.

3          THE COURT:  Do you understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Do you still want to plead guilty?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Okay.  Do you understand that you can

8   appeal your sentence to a higher court, which could modify or

9   set aside the sentence or order me to resentence you --

10          THE DEFENDANT:  Right.

11          THE COURT:  -- do you understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  And the Government, if I give you a

14   sentence the Government doesn't like, the Government could

15   also appeal.  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  And there's certain

18   constitutional rights that I want to go over with you that

19   you're giving up by pleading guilty.  The first one is,

20   you're presumed innocent.  As you sit here now, I presume

21   that you're innocent of these charges and you're only guilty

22   if the Government proves you guilty beyond a reasonable

23   doubt.  Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And, by pleading guilty, you're giving

1    up that presumption of innocence in admitting your guilt?

2              THE DEFENDANT:  Right.

3              THE COURT:  Okay.  You have a right to the

4    assistance of a lawyer at every stage of the proceeding,

5    including trial -- before trial, during trial, after trial

6    for an appeals to higher courts.  And if you can't afford a

7    lawyer, as we did here, the Government will appoint a lawyer

8    to represent you.

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  All right.  Do you understand you have a

11   right to plead not guilty and persist in that plea and have

12   your case tried by a jury of 12 or by a judge?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Do you understand you have a right to a

15   jury of your peers drawn from the residents of this district

16   and that you would get help on who to select to sit on that

17   jury, Mr. Tauber would give you assistance on that?

18             THE DEFENDANT:  Okay.

19             THE COURT:  Do you understand that in order to find

20   you guilty a jury would have to be unanimous, that is all 12

21   jurors would have to find that Ms. Lunkenheimer has proven

22   your guilt beyond a reasonable doubt --

23             THE DEFENDANT:  Mm-hmm.

24             THE COURT:  -- which is the highest standard in the

25   law?

20

1          You could obtain a subpoena or a court order to make
2   witnesses come to court to testify on your behalf.  Do you
3   understand that?
4          THE DEFENDANT:  Yes, sir.
5          THE COURT:  Do you understand, if you're found
6   guilty, you could appeal the finding of guilt to a higher
7   court, which could set aside or modify the finding of guilt
8   or give you a new trial?
9          THE DEFENDANT:  Yes, sir.
10          THE COURT:  Do you understand that at a trial you
11   would have the right to confront and cross-examine your
12   accusers?  That is, you'd get to sit in this courtroom and
13   have Mr. Tauber question their accuracy of the offense that
14   they claim they perceived and undermine their credibility --
15          THE DEFENDANT:  Yes, sir.
16          THE COURT:  -- in front of a jury and you've given
17   up that right.
18          Do you understand that at a trial you wouldn't have
19   to testify?
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  That is, the Government can't force you
22   to testify if you don't want to and that, if you did refuse
23   to testify, Ms. Lunkenheimer could not comment on that in
24   front of the jury or ask them to make an adverse inference
25   from that.

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  Do you understand that by

3    entering a guilty plea today there's going to be no trial and

4    you're giving up all the rights that I just told you about by

5    admitting that you're guilty?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Now, in order to prove you guilty beyond

8    a reasonable doubt, the Government would have to prove two

9    things.  First, they would have to prove that you intended to

10   commit the crime of illegally possessing a controlled

11   substance, in this case a mixture or substance containing a

12   detectable amount of Oxycodone; and that thereafter you did

13   some act constituting a substantial step toward the

14   commission of that crime which strongly corroborates your

15   criminal intent.

16         THE DEFENDANT:  Mm-hmm.

17         THE COURT:  Those are the two things they'd have to

18   prove to convict you.

19         THE DEFENDANT:  Okay.

20         THE COURT:  Okay?

21         THE DEFENDANT:  Mm-hmm.

22         THE COURT:  Now, what I'm going to ask Ms.

23   Lunkenheimer to do now is to summarize the evidence they

24   would introduce against you.  Now, I want you to listen very

25   carefully to be sure that you did everything that she says

1    you did.

2              THE DEFENDANT:  Okay.

3              THE COURT:  Because if you didn't, I need you to

4    tell me --

5              THE DEFENDANT:  Okay.

6              THE COURT:  -- because you shouldn't plead guilty if

7    you didn't do what she says.

8              THE DEFENDANT:  Okay.

9              THE COURT:  Okay?

10             THE DEFENDANT:  Yes, sir.

11             MS. LUNKENHEIMER:  If this case were to proceed to

12   trial, the Government would introduce evidence through

13   witnesses and documentary exhibits which would establish the

14   following:  That on September 26th, 2011 the Defendant met

15   with an individual cooperating with the Government inside of

16   a building on the Boeing Company's Ridley Park, Pennsylvania

17   campus, that campus being in the Eastern District of

18   Pennsylvania.  There the Defendant bought three placebo

19   Oxycontin 40 milligram tablets from the cooperating source

20   for $60.

21             THE COURT:  Okay.  Mr. Summers, is that -- did you

22   do that?

23             THE DEFENDANT:  Yes, I did.

24             THE COURT:  Okay.  Do you have any disagreement with

25   anything Ms. Lunkenheimer said?

1          THE DEFENDANT:  No.

2          THE COURT:  Okay.  Did you understand her clearly?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.  No voices in your head were

5     confusing you?

6          THE DEFENDANT:  Uh, no, I understood her.

7          THE COURT:  Why do you hesitate?

8          THE DEFENDANT:  Well, the voices are -- they're

9     pretty loud, but I understood what she said.

10          THE COURT:  Okay.  Are the voices at all affecting,

11     you know, your ability to really think clearly and decide

12     whether you want to plead guilty?

13          THE DEFENDANT:  No, I don't think so, no.

14          THE COURT:  Okay.  All right.  Do you want me to

15     have her repeat it again?

16          THE DEFENDANT:  Yes, please.

17          THE COURT:  All right.  Why don't you do that, Ms.

18     Lunkenheimer?

19          MS. LUNKENHEIMER:  On September 26th, 2011 --

20          THE COURT:  Do you understand that, that's the date?

21          THE DEFENDANT:  Yes.

22          MS. LUNKENHEIMER:  -- the Defendant, meaning you --

23          THE DEFENDANT:  Mm-hmm.

24          MS. LUNKENHEIMER:  -- met with somebody who was

25     working with the Government at the Boeing Company's plant.

1    And inside one of the buildings on the plant, the person

2    working with the Government sold to you three placebo

3    Oxycontin 40 milligram tablets --

4              THE DEFENDANT:  Right.

5              MS. LUNKENHEIMER:  -- pills.

6              THE COURT:  Do you know what placebo means?

7              MS. LUNKENHEIMER:  Placebo meaning that they weren't

8    actually Oxycontin.

9              THE DEFENDANT:  Mm-hmm.

10             MS. LUNKENHEIMER:  They looked like it --

11             THE DEFENDANT:  Yeah.

12             MS. LUNKENHEIMER:  -- they were pretending to be it,

13   but they were missing the active ingredient, which is in this

14   case Oxycodone.

15             THE DEFENDANT:  Right, okay.

16             MS. LUNKENHEIMER:  Okay?  And that you paid $60 for

17   those placebo tablets.

18             THE DEFENDANT:  Yes.

19             MS. LUNKENHEIMER:  You didn't, obviously, know they

20   were placebo at the time.

21             THE DEFENDANT:  Right.

22             THE COURT:  Okay.  So you bought three pills from

23   somebody in the Boeing plant and gave him $60?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  And he told you they were Oxycontin when

1   in reality they weren't?

2           THE DEFENDANT:  Right.

3           THE COURT:  Do you remember doing that?

4           THE DEFENDANT:  Yes, I do.

5           THE COURT:  Okay.  And do you remember paying the

6   $60?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Now, why did you want to buy the

9   Oxycodone?

10          (Pause.)

11          THE DEFENDANT:  I used to use that to quiet my

12  voices.  I used to self-medicate myself.

13          THE COURT:  Okay.  All right.  So that's why you did

14  it?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Okay.  Do you have any disagreement with

17  the Government's proof?

18          THE DEFENDANT:  No, I don't.

19          THE COURT:  Okay.  All right.  Now, do you want to

20  now plead guilty?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Okay.  Why don't you stand and I'll take

23  your guilty plea?

24          THE AUDIO OPERATOR:  William Brian Summers, you have

25  been charged in an information, Criminal Number 11-585, in

1   violation of 21 U.S.C. Section 846, that is attempted

2   possession of Oxycontin; how do you plead, guilty or not

3   guilty?

4                   THE DEFENDANT:  Guilty.

5                   THE AUDIO OPERATOR:  Thank you.

6                   THE COURT:  All right, sir, thank you.  I'm going to

7   accept your guilty plea -- you can be seated, I'm sorry.  I'm

8   going to find that you're fully alert, competent and capable

9   of entering an informed plea.  I'm satisfied, despite our

10  conversation about the voices and your medication, that you

11  understand what's going on today and you're voluntarily and

12  knowingly entering a plea.  I find that your plea is

13  supported by an independent basis in fact containing each of

14  the essential elements of the offenses pled to.  And your

15  plea of guilty is therefore accepted and you are now adjudged

16  guilty of the offense charged in the information.

17                  Now, I'm going to ask the Probation Office to

18  prepare a presentence report.  You're going to be required to

19  give some information to the Probation Officer to help me get

20  a better picture of you and your life.

21                  THE DEFENDANT:  Right, okay.

22                  THE COURT:  And Mr. Tauber will help you with that

23  process, all right?  He'll sit down with you when you meet

24  with the Probation Officer and kind of guide you through

25  that.

27

1          THE DEFENDANT:  Okay.

2          THE COURT:  Okay?  Now, after the Probation Officer

3  does his report, both Mr. Tauber and Ms. Lunkenheimer will

4  have the chance to file objections to it.  So Mr. Tauber will

5  go over it with you, he'll go over it line-by-line and

6  explain to you what's in there.  If you disagree with

7  something, you can object to the Probation Officer and, if

8  you don't get it worked out, you can file objections with me.

9          THE DEFENDANT:  Okay.

10          THE COURT:  And then I'll rule on them, but your

11  guilty plea is going to remain even if you don't like my

12  ruling.

13          THE DEFENDANT:  Right.

14          THE COURT:  Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Okay.  I have a sentencing date set

17  for... November 6th at 10:00 a.m.

18          THE DEFENDANT:  What time?

19          THE COURT:  10:00 a.m. on November 6th.

20          THE DEFENDANT:  10:00 a.m., November 6th?

21          THE COURT:  Yeah.  Does that work for you?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Okay.  Mr. Tauber?

24          MR. TAUBER:  Yeah, that's fine, Judge.

25          THE COURT:  Ms. Lunkenheimer?

1          MS. LUNKENHEIMER:  Yes, your Honor.

2          THE COURT:  I know you're always available, Ms.

3    Lunkenheimer.

4          (Laughter.)

5          MS. LUNKENHEIMER:  Well, I think we both agree that

6    November is like, well, what could we be doing in November?

7          (Laughter.)

8          THE COURT:  Oh, you'll be busy, I'm sure.

9          MS. LUNKENHEIMER:  It will fill up fast enough, I

10   know.

11         THE COURT:  Ms. Lunkenheimer is the only lawyer I've

12   ever had in front of me who whenever I ask her for a date to

13   do something she always says, I'm always available.

14         (Laughter.)

15         MS. LUNKENHEIMER:  I did say -- I did say to your

16   deputy this time, I'm available but I hope I'm not late

17   because of kid drop-off this morning.

18         (Laughter.)

19         THE COURT:  Well, we can change it if you have --

20         MS. LUNKENHEIMER:  No, no, no, we made it on time.

21         THE COURT:  -- childcare issues.

22         MS. LUNKENHEIMER:  Your Honor, the one thing I just

23   wanted to say to Mr. Summers.  When you talk to Pretrial,

24   they have -- it sounds to me like they've helped you get into

25   this clinic and what they may need to understand is that in

1    your view that isn't quite enough for you right now, you need

2    a little more assistance.

3              THE DEFENDANT:  Okay.

4              MS. LUNKENHEIMER:  That's what the Judge is --

5    that's what I talked to you about before we started --

6              THE DEFENDANT:  Mm-hmm.

7              MS. LUNKENHEIMER:  -- is that we want to make sure

8    you're getting everything you need.

9              THE DEFENDANT:  Right.

10             MS. LUNKENHEIMER:  If you feel that it's not enough

11   because the doctor doesn't have enough time or whatever

12   reason, please tell them that.  We'll tell them that if they

13   ask, but it will helpful for you to say it's just not enough

14   and I just -- I need a little more help.

15             THE DEFENDANT:  Right, okay.

16             MS. LUNKENHEIMER:  So the Judge is going to order

17   them to do that, but they need to understand why the order is

18   coming in when -- you know, when you are going to a clinic.

19   So they need to hear that you need a little more help.

20             MR. TAUBER:  I'll give Rockey Reyes a call to

21   discuss this.

22             THE COURT:  Maybe you should even stop over --

23             MR. TAUBER:  Yeah, yeah.

24             THE COURT:  -- this morning, and I'll call him this

25   morning and tell him you're coming.

1          MR. TAUBER:  Okay.

2          THE COURT:  And Rocky is a good guy and he cares

3    about people, so he'll get you the help you need.  You know,

4    whatever the medical professionals deem it to be, I hope

5    you'll agree to it and abide by it.

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  So you've been doing well on

8    pretrial release.  Probation -- or Pretrial Services gave you

9    a great report, so you should be very proud of that.

10          THE DEFENDANT:  Okay, thank you.

11          THE COURT:  All right?  So I want you to keep it up

12    and if you feel like you need help, if you feel like, you

13    know, the mental health issues that you're experiencing are

14    getting overwhelming, tell somebody.

15          THE DEFENDANT:  Okay.

16          THE COURT:  All right?  And we'll get you the help

17    you need.

18          THE DEFENDANT:  Okay.  Well, who do I contact?

19          THE COURT:  You can contact either Mr. Tauber or

20    contact Rocky.

21          THE DEFENDANT:  Okay.

22          THE COURT:  Or, if you can't get a hold of them, you

23    can contact my office or Ms. Lunkenheimer.

24          THE DEFENDANT:  Okay.

25          THE COURT:  All right?  Just reach out for somebody,

1    maybe even your counselor or have your wife get you to the

2    hospital.

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  But we'll get you whatever assistance

5    you need if you need it.

6          THE DEFENDANT:  Mm-hmm.

7          THE COURT:  Okay?

8          MR. TAUBER:  Judge, I just had a couple questions

9    about the -- how the Court is -- the protocol for these 3607

10   motions.  I know there's going to be -- there's been a

11   hearing, there's going to be another hearing, is it the

12   Court's intention to make a ruling of some sort of -- I'm

13   just trying to find out how you're going to proceed.

14         THE COURT:  Yeah, here's what I'm going to do.

15   Apparently, right now there's four that are ripe?

16         MS. LUNKENHEIMER:  Well, that are ripe -- I mean,

17   his would now be ripe, but there's --

18         THE COURT:  No, I mean there's four that we've --

19         MS. LUNKENHEIMER:  I thought there were five, I'm

20   sorry, there's --

21         THE COURT:  Maybe there's five.

22         MS. LUNKENHEIMER:  There's Philip Duris --

23         THE COURT:  Patterson.

24         MS. LUNKENHEIMER:  -- Patterson, Swann, and then

25   Wilson was -- but he wasn't -- but was there someone else?

1        THE COURT:  He's not ready yet, so four.

2        MS. LUNKENHEIMER:  You're right, sir.

3        THE COURT:  What I'm going to do is, I'm going to --

4   after the testimony is completed, I'm going to issue a ruling

5   on those four.

6        MR. TAUBER:  I see.

7        THE COURT:  And I think that ruling will set out the

8   parameters and kind of make it -- give everybody kind of a

9   road map on where we're going for the other cases.

10        MR. TAUBER:  Okay, all right, that will be helpful.

11        THE COURT:  So I'll make my findings and rule on

12   whether any of those four folks are eligible.  And I think,

13   once that happens, the rest of it will fall in place and we

14   can address the other situations at the time of sentencing.

15   So why don't you file your motion, it just has to be a page

16   or two.

17        MR. TAUBER:  Yeah, that's fine.

18        THE COURT:  And if you want to file something longer

19   like, for example, Mr. Scuderi filed like a five-or-six-page

20   thing outlining some of the pertinent factors of his client's

21   situation --

22        MR. TAUBER:  Right, right.

23        THE COURT:  -- that he wants me to --

24        MR. TAUBER:  I would anticipate I'll be probably --

25   I will file a motion just to get on the docket, because I

1    would expect I'll file some sort of supplemental --

2              THE COURT:  Yeah, that's fine.

3              MR. TAUBER:  -- filing.

4              MS. LUNKENHEIMER:  That's what we had discussed.  I

5    understood he didn't have time to do that --

6              THE COURT:  Yes.

7              MS. LUNKENHEIMER:  -- and obviously there's some

8    issues he needs to explore further.

9              THE COURT:  Yes, we understand.

10             MS. LUNKENHEIMER:  Your Honor, actually just for my

11   own clarification, it's helpful to me because we were going

12   to ask the Court, we were not then going to put in a

13   supplemental personal section about the new people who have

14   kind of become ripe, in the meantime we were focusing on the

15   four --

16             THE COURT:  We'll deal with those at the time of

17   sentencing.

18             MS. LUNKENHEIMER:  Okay, that's -- we just didn't

19   want to have to supplement our motion at this point, we

20   wanted to focus on the witnesses we were going to present for

21   the general issue.  Okay.

22             THE COURT:  Yeah, whoever -- like tomorrow, whoever

23   is going to be there that you're going to be presenting

24   testimony on --

25             MS. LUNKENHEIMER:  It's not going to be cooperators

1    who sold to the new individuals who have become ripe, we were

2    going to do just what we told you before --

3              THE COURT:  Just those four?

4              MS. LUNKENHEIMER:  Yes.

5              THE COURT:  Okay.

6              MS. LUNKENHEIMER:  Thank you.

7              THE COURT:  All right.

8              MR. TAUBER:  So the Court will be issuing some sort

9    of a written ruling on these initial ones and I can find

10   guidance during that, I assume.

11             THE COURT:  Yeah, I think everybody will get

12   guidance from however I rule on that --

13             MR. TAUBER:  All right.

14             THE COURT:  -- and we can kind of deal with the

15   other cases on an individual basis as sentencing comes up.

16             MR. TAUBER:  Okay.

17             THE COURT:  If you want a ruling before sentencing

18   day, I'll be happy to do that.

19             All right.  Thanks, everybody, for your patience.

20             MS. LUNKENHEIMER:  Thank you, your Honor.

21             MR. TAUBER:  Thank you.

22             THE COURT:  Mr. Summers, good luck to you, I hope

23   things work out.

24             THE DEFENDANT:  Thank you, Judge, I appreciate it.

25             THE COURT:  Okay.

1          THE DEFENDANT:  Thank you.

2          THE COURT:  All right.  Mr. Tauber, nice to see you.

3          MR. TAUBER:  Thank you, Judge.

4          THE COURT:  Ms. Lunkenheimer.

5          MS. LUNKENHEIMER:  Thank you, your Honor.

6          (Hearing adjourned at 9:33 o'clock a.m.)

7                              *  *  *

CERTIFICATION

        I hereby certify that the foregoing is a correct

transcript from the electronic sound recording of the

proceedings in the above-entitled matter.

s:/Geraldine C. Laws, CET              Dated 10/3/12
Laws Transcription Service